# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE NOISETTE *ON BEHALF OF THE ESTATE OF CARL DAVID NOISETTE* | : : : | |
| *Plaintiff,* | : : | CIVIL ACTION |
| v. | : : | |
| CITY OF PHILADELPHIA ET AL., *Defendants.* | : : | No. 16-6419 |

## MEMORANDUM

PRATTER, J.                                                                                                OCTOBER 19, 2017

Liability under § 1983 is limited, intended to hold accountable those who deprive others of their constitutional rights. No one in the present case disputes that those who allegedly deprived Mr. Noisette of his constitutional rights, ultimately ending in his death, can be haled to court. This Memorandum focuses on those who were not personally involved in the alleged constitutional deprivation, but who the plaintiff seeks to hold liable along with the direct actors. For the reasons discussed below, the claims against these defendants cannot stand as presently constituted, but the plaintiff may amend the complaint in the event discovery reveals evidence consonant with the § 1983 liability of others.

## FACTUAL BACKGROUND

Marie Noisette brings this lawsuit on behalf of her brother, decedent Carl Noisette, who was detained at Curran-Fromhold Correctional Facility (CFCF) when he hanged himself with a bedsheet on May 31, 2016. He reportedly had a long history of mental illness and had been prescribed Haldol, an anti-psychotic medication that he was supposed to take daily to treat his

1

schizophrenia. Mr. Noisette's condition was severe in the spring of 2016. He was hospitalized for suicidal ideations just two months before he was detained in CFCF.

On May 8, 2016, Mr. Noisette was arrested and detained at Philadelphia's CFCF facility. While detained, Mr. Noisette allegedly informed unnamed corrections officers and health care providers that he was experiencing symptoms of mental illness, lacked access to his prescription medication, and was suicidal. He expressed psychotic thoughts and a desire to harm himself. The complaint further alleges that Mr. Noisette received inadequate treatment for his mental illness while being held at CFCF. He hanged himself with a bedsheet three weeks after arrival at CFCF.

Ms. Noisette sets out four causes of action regarding this suicide on behalf of Mr. Noisette's estate. Count I alleges that individual health care providers and corrections officers were deliberately indifferent to Mr. Noisette's serious medical needs, resulting in his suicide. In Count II, Ms. Noisette alleges that multiple defendants were liable in a supervisory role for the inadequate medical care her brother received. Specifically, Ms. Noisette sued MHM Services Inc.[1], and the "City Defendants," namely, Blanche Carney (Philadelphia Department of Prisons Commissioner), Bruce Herdman (Chief of Medical Operations, Philadelphia Department of Prisons), Gerald May (Warden, CFCF), the City of Philadelphia, and the Philadelphia Department of Prisons. Count III alleged that the City of Philadelphia was liable for maintaining inadequate policies and customs, and inadequately training its employees to stop suicides. Count IV alleged medical negligence, and Count V alleged wrongful death against all defendants.

Relevant to the motions at hand, these causes of action break down into suits against three groups. First, Ms. Noisette sues the unnamed parties (the "John Doe" defendants) who directly denied Mr. Noisette his medicine and treatment. Second, she sues the supervisors of

---

[1] The City of Philadelphia outsources psychological medical care of inmates to MHM Services. MHM managed psychological health care treatment at CFCF.

2

these individuals for supervisory liability. This includes the City Defendants and MHM. Finally, Ms Noisette sued Philadelphia for municipal liability under § 1983. No one disputes the viability of suit against the first group of "John Doe" defendants. Rather, the dispute in both pending motions revolves around supervisory liability for the remaining defendants and municipal liability for the City of Philadelphia.

## LEGAL BACKGROUND

### I. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original). However, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others

3

to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents"). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore reality or even discount it. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). If a claim "is vulnerable to 12(b)(6) dismissal, a district court

4

must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## II. Section 1983

To state a claim against an individual under § 1983, a plaintiff must show that the defendant (1) was a person who (2) under the color of state law (3) caused a (4) deprivation of constitutional rights. *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Such a claim is strictly circumscribed. Neither side here argues that the complaint failed to allege a deprivation of constitution rights, or that the defendants were persons acting under the color of state law. The question at hand focuses on the causation requirement in § 1983, which requires a discussion of supervisory liability.

The Supreme Court has only addressed the question of supervisory liability twice in the last half century. First, in *Rizzo v. Goode*, the Court found that a theory a "pattern of frequent police violations" was insufficient to hold a police department liable under § 1983. 423 U.S. 362, 374 (1976). The Court held that there must be an "adoption and enforcement of deliberate policies" by defendants to give rise to liability. *Id.* The Court refined this standard two years later in *Monell*. There, a group of women challenged an official policy requiring pregnant employees to take unpaid leaves of absence. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). The Court held the challenge to the official policy was permissible, but such liability is limited. *Id.* at 659. While local governments were "persons" under § 1983, they could not be held liable under a theory of *respondeat superior*. *Id.* at 691. To be liable, the government must perform an official act. The "touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Id.* at 690. However, "local governments . . . may be sued for

5

constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.*

In other words, for a city to be held liable under § 1983, there must be either (1) an official act or (2) a custom that caused the deprivation of civil rights. The *Monell* Court rejected, as a categorical matter, the concept of *respondeat superior* liability in § 1983.[2] Rather, there must be a "decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 659. As the Third Circuit Court of Appeals explained, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

As lower courts analyzed the *Rizzo* and *Monell* cases, two salient features emerged. First, courts interpret "supervisory liability" differently than "municipal liability" under § 1983. For supervisory liability to attach, a plaintiff must either (1) "plead that [defendants] 'directed others to violate her rights'" *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *A.M.*, 372 F.3d 5 at 586) or (2) that "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 725 (3d Cir. 1989). Municipal liability on the other hand, only attaches when an injury is "inflicted by 'execution of a government's policy or custom.'" *Santiago*, 629 F.3d at 135 (quoting *Monell*, 436 U.S. at 694).

---

[2] While there had been some dispute about whether this categorical rejection was dicta or precedential, the dispute is largely academic. The categorical reasoning behind rejection of *respondeat superior* applies equally to municipal liability addressed in *Monell*, and supervisory liability addressed in *Rizzo*. Post-*Monell* courts have taken the statement to apply equally to supervisory liability and municipal liability.

6

Second, both standards focus on causation. For supervisors or policymakers to be liable, their actions must cause the deprivation of civil rights. In a straightforward application, a supervisor would be liable under § 1983 for an unconstitutionally race-based arrest if that arrest was made pursuant to an unconstitutional policy to arrest people based on race. But such a requirement need not be an affirmative step. It can also be "deliberate indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). To meet the deliberate indifference standard, plaintiffs must plead that (1) there is an unreasonable risk of a deprivation of rights (2) that the supervisor or municipality was aware of that risk (3) that they were indifferent to that risk and (4) the failure to enact policies regulating that risk caused the deprivation of rights in this instance. *Id.* Only then can a policy-maker's inaction fairly be deemed as causing a plaintiff's deprivation of rights under § 1983.

## DISCUSSION

Ms. Noisette pursues two alternate theories of indirect liability. The first theory, brought against all moving defendants, is that the defendants are liable for policies or customs that led to Mr. Noisette's suicide. Second, Ms. Noisette alleges that the City of Philadelphia is municipally liable for failure to train its employees, which amounts to deliberate indifference to the rights of the prisoners. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) ("[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.")

### I. Supervisory & Municipal Liability: Inadequate Policies or Customs

Ms. Noisette's first claim is that there were no policies or customs in place to deal with suicidal prisoners or, in the alternative, the policies in place were inadequate. Such bare allegations are not enough to state a claim for relief. Ms. Noisette alleges no factual basis for the
7

claims and simply recites conclusory assertions that there were no policies, or in the alternative, the policies were insufficient. She points to no specific times, dates, policy names, policy substance, or specificities about why the policies were inadequate. Such information is not impossible to come by. A simple request through Pennsylvania's Right to Know Law (the state analogue to FOIA) could reveal the policy.

The Third Circuit Court of Appeals held that similar claims were insufficient in *Wood v. Williams*, 568 Fed. Appx. 100 (3d Cir. 2014). In *Wood*, a plaintiff brought a § 1983 claim for violation of her first amendment rights, alleging she was fired from her job as a teacher for speaking on a subject of public concern. *Id.* at 101. The Court held that the complaint did not state a cause of action under a *Monell* theory because the plaintiff did not adequately plead a factual basis for the policies that led to her termination. The complaint only claimed that the defendant "developed and maintained policies or customs exhibiting deliberate indifference to the Constitutional rights" of the plaintiff. *Id.* at 103. The Court held that "'simply paraphras[ing] § 1983' does not meet Rule 8's pleading requirements because it fails to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability." *Id.* at 104 (quoting *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)). Given that Ms. Noisette's claim mimics the legal standards from *Monell* and fails to state any additional facts, the complaint fails to state a claim under this theory.

## II. Municipal Liability: Failure to Train

Ms. Noisette then brings a claim against the city for failure to train. For Ms. Noisette to state a claim, she must show that Philadelphia's "failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants[.]" *City of Canton v.*

8

*Harris*, 489 U.S. 378, 389 (1989). Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id*; *See also Carter v. City of Phila.*, 181 F.3d 339 (3d Cir. 1999) (using the same failure to train language to dismiss a similar complaint). To plead deliberate indifference, the plaintiff must plead "that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter*, 181 F.3d at 357. The plaintiff must also show that (4) the failure to train caused the alleged injury. *Sample*, 885 F.2d at 1118. Philadelphia moved to dismiss, arguing that she has not met these prongs.

The complaint at issue here only parrots the relevant language in *Canton*, alleging that Philadelphia was deliberately indifferent "to the constitutionally protected rights of detainees." Am. Compl. ¶ 97. The closest Ms. Noisette comes to meeting the second prong (a history of employee mishandling) is a claim that "a number of other inmates" have committed suicide. Am. Compl. ¶ 38. This does not evince a difficult choice for employees or a history of employee mishandling of suicide cases. Even with superb handling of mentally ill patients, some will still find a way to commit suicide. This assertion, devoid of numbers or relevant data, is not enough to "nudge[ her] claims across the line from conceivable to plausible" so her "complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

But even if this were enough, Ms. Noisette failed to establish any connection between the policies and the injury here. While she has pointed to indifference by the John Doe Defendants in the face of suicidal ideations by the decedent, she has not alleged that the inaction by the John Doe Defendants were pursuant to any promulgated policy. On the contrary, Ms. Noisette claims

9

that the John Doe defendants "recklessly failed to adhere to CFCF policy concerning Mr. Noisette's treatment and care." Am. Compl. ¶ 68.c. This failure to adequately tie the John Doe actions to a promulgated policy is a second independent reason why Ms. Noisette's claims fail as a matter of law.

### III. State Law Claims

In response to MHM's motion to dismiss, the plaintiff voluntarily withdrew her state law medical negligence claim. Without an underlying state claim, the Count V wrongful death action must fall as well because "wrongful death and survival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death." *Johnson v. City of Phila.*, 105 F. Supp. 3d 474, 483 (E.D. Pa. 2015) (quoting *Sullivan v. Warminster Twp.*, 765 F. Supp. 2d 687, 707 (E.D. Pa. 2011)).

The plaintiff chose not to address this argument in her response to the motion to dismiss, and at oral argument merely asserted that there was, in fact, an underlying state law claim.[3] Such an assertion does not somehow change the text of the complaint or require the Court to conjure up novel legal theories as to which state law claim fits the facts. Therefore, Counts IV and V must be dismissed. The plaintiff is permitted to amend the complaint with appropriate state law claims that are permitted through a wrongful death action, if doing so will state a valid claim and if such a modification is initiated within a reasonable time period.

---

[3] After oral argument, the Court invited the parties to submit supplemental briefing on Count V, but no party filed supplemental briefing on the issue.

10

## CONCLUSION

For the foregoing reasons, the motions to dismiss are granted. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE